IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

ANTHONY OLIVE, #B45286,                    )
                                           )
          Plaintiff,                       )
                                           )
     vs.                                   )          No. 02-945-WDS
                                           )
DONALD N. SNYDER, et al.,                  )
                                           )
          Defendants.                      )

## DEFENDANTS' RESPONSE
## TO PLAINTIFF'S INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COME the Defendants, ROGER COWAN, GARY A. KNOP, THOMAS

MAUE, and TOM CARAWAY, by and through their attorney, Lisa Madigan, Attorney

General for the State of Illinois, hereby submit their response to Plaintiff's

Interrogatories and Request for Production of Documents as follows:

Defendants object to Plaintiff's supplemental interrogatories and requests to

produce because they are not in the proper form as required by the Federal Rules of

Civil procedure. Defendants assert that pursuant to the Federal Rules of Civil

Procedure, Plaintiff is entitled to serve no more that 25 written interrogatories, including

discrete subparts, on Defendant. Fed. R. Civ. P. 33(a)(1). Defendants responded to

previous interrogatories that exceeded 25 written interrogatories and their discrete

subparts. Plaintiff's second set of Interrogatories exceeds the number of interrogatories

permitted by the Federal Rules of Civil Procedure. Plaintiff's first set of Interrogatories

for Defendant Cowan included 21 interrogatories with approximately 30 discrete

1

subparts.  Plaintiff's first set of Interrogatories for Defendant Knop included 21 interrogatories with approximately 15 discrete subparts.  Plaintiff's first set of Interrogatories for Defendant Maue included 17 interrogatories with approximately 23 discrete subparts.  Plaintiff's first set of Interrogatories for Defendant Caraway included 15 interrogatories with approximately 15 discrete subparts.  Plaintiff has not requested leave to serve Defendants with interrogatories in excess of 25.

1.      Please state all outside or internal departments (including the Illinois Department of Corrections or other agencies that conducted audits or inspections in pertain to compliance with each state healthcodes at menard correctional center in the segregation unit during the year 2000 through 2001.  (sic)

**Response:  Defendants Knop, Cowan, and Caraway are no longer employed by the Illinois Department of Corrections and do not have possession, custody or control of documents that would contain this information.  Defendant Maue is not in possession of this information.**

1.      If those healthcodes are set forth in any policy, directive or other documents, produce the document.  (sic)

**Response:  Plaintiff is directed to Defendants' response to Plaintiff's first interrogatory number 1-21.**

2.      Please name by full description and location as well as state if any of the referenced / listed departments or agencies in interrogatory #1 conducted an audit or inspection at Menard Correctional Center in the Segregation unit in the year 2000 through 2001.

2

**Response:   Plaintiff is directed to Defendants' response to Plaintiff's first interrogatory number 1.**

2.      If so, please produce all documents relevant to each Audit or inspection.

**Response:   Plaintiff is directed to Defendants' response to Plaintiff's first interrogatory number 1.**

3.      Please state which Menard Correctional Center official who were directly responsible for ensuring in the year 2000 through 2001 that the segregation building healthcodes, safety and sanitation needs were met.  (sic)

**Response:   Plaintiff is directed to Defendants' response to Plaintiff's first interrogatory number 1.**

4.      Please state if there were any recommendations made in the year 2000 through 2001 by any outside or internal departments (including the Illinois department of corrections) or other agencies requesting any changes in or that the menard correctional center segregation building healthcodes or safety and sanitation policies either must be changed, conformed to, or is not working.  (sic)

**Response:   Defendant Caraway was not responsible for ensuring the responsibilities for the segregation building at Menard Correctional Center and is unaware as to who would have had these responsibilities in 2000 through 2001.**

4.      If so, please produce all documents relevant to this interrogatory.

**Response:   Plaintiff is directed to Defendants' response to interrogatory number 1.  Attached to this document as Bates stamped documents 1- 21 are documents relevant to Plaintiff's request.**

3

5.      Please state any existing statements or recommendations pertaining to the quality of menard correctional center seg building being a present (during the year 2000 through 2001) or future health risk to inmates housed in the segregation building. (including but not limited to water quality).

**Response:   Defendants do not understand Plaintiff's interrogatory number 5 and therefore cannot formulate an answer to this interrogatory.**

5.      If such statements or recommendations exist in any documents, please produce the documents.

**Response:   Plaintiff is directed to Defendants' response to interrogatory number 5.**

6.      Please state if there has been any injunctions or consent decrees within the past 10 years issued on menard correctional center by a court of law that would be relevant, consistent, or similar to the eighth amendment claims made by plaintiff in the above entitled cause.

**Response:   Defendants are unaware of any information responsive to interrogatory number 6.**

6.      If so, please produce each injunction or consent decree.

**Response:   Plaintiff is directed to Defendants' response to the first part of Plaintiff's interrogatory number 6.**

7.      Please state in great detail the duties of each individual responsible for ensuring that the segregation in menard correctional center during the year 2000

4

through 2001 were met in pertain to safety and sanitation requirements as well as the segregation building health codes.

**Response:   Defendant objects to Plaintiff's interrogatory number 7 as overly burdensome.  Additionally, as stated earlier, Defendants no longer employed by the Illinois Department of Corrections do not have access to this information.**

7.      If those job duties are set forth in any job description or other document, produce the document.

**Response:   Plaintiff is directed to Defendants' response to the first part of Plaintiff's interrogatory number 7.**

8.      Please state the procedure in effect during november 2000 at menard correctional center for responding to, investigating and deciding both inmate or staff grievances or complaints.  If the procedures for handling complaints or grievances based on healthrisks, safety and sanitation is different from the procedures for handling other kinds of grievances or complaints, state both procedures. (including but not limited to separate procedures when handling inmate and staff grievances or complaints.) (sic)

**Response:   Plaintiff is referred to 20 Ill. Admin. Code Section 504:  Discipline and Grievances for Offenders.**

8.      If those procedures are set forth in any directive, manual or other document, produce the document.

**Response:   This information can be more easily obtained by Plaintiff at the library at his current place of incarceration.**

5

9.      Please state if any grievances or complaints by any segregation working member of staff or an inmate housed in segregation at menard correctional center were filed during the year 2000 through 2001 concerning any health risks or safety and sanitation violations.  (sic)

**Response:   Defendant is no longer employed by the Illinois Department of Corrections and do not have access to this information.  Furthermore, Defendants object to Plaintiff's interrogatory 9 as overly burdensome.**

9.      If so, produce each document.

**Response:   Plaintiff is referred to the first part of Defendants' response to number 9.**

10.      Produce any and all documents created by menard correctional center staff members in response to any complaints or grievances filed by staff or inmates during the year 2000 through 2001 concerning a healthrisk or a safety and sanitation concern.  (sic)

**Response:   Defendants no longer employed by the Illinois Department of Corrections do not have access to this information.  Additionally, Defendants object to Plaintiff's request as overly burdensome and vague.**

11.      Please state in detail upon inspection of menard correctional center pursuant to 735 ILCS 135/2 by the Illinois Department of Health the complete circumstances of the report that was issued to the Director of Corrections in the year 2000 through 2001 as to the sanitary conditions and needs of menard correctional center.

6

**Response:   Defendants no longer employed by the Illinois Department of Corrections do not have access to this information.   Defendant Maue is not in possession of this information.**

11.     If this report(s) or part thereof are set forth in a document, please produce the document(s).

**Response:   Defendants no longer employed by the Illinois Department of Corrections do not have access to this information.**

12.     Please state the prison standards promulgated by the federal and state government in pertain to safety and sanitation conditions in a prison.

**Response:   Defendants object to Plaintiff's interrogatory number 12 as overly broad.**

12.     If these standards are set forth in a document, please produce the document.

**Response:   Defendants object to Plaintiff's request to produce as overly broad.**

13.     Please identify the regulation minimum standards established by the department of public health which pertains to water supply, water hazards, rodent and insect control for the Illinois Department of Corrections institutions. (including but not limited to all amended standards since the year 2000.

**Response:   Defendants object to Plaintiff's interrogatory number 13 based on relevance.**

7

13.    If such standards exist in any policy, directive or manual, please produce all documents.

**Response:   Plaintiff is referred to Defendants' response to Plaintiff's interrogatory number 13.**

14.    Please produce all existing documentation created by Menard Correctional Center (strictly referencing to the menard correctional center segregation unit in the year 2000 through 2001) showing a detailed description of compliance with 730 ILCS 5/3-7-3 institutional safety and sanitation(A).

**Response:   Defendant objects to Plaintiff's request as overly broad. Additionally, Defendants no longer employed by the Illinois Department of Corrections do not have possession or control of these documents.**

15.    Please name each official during the year 2000 through 2001 that you delegated your responsibilities to and/or gave signature authority to and for what purpose was each official delegated your responsibility or given your signature authority for.

**Response:   Defendants object to Plaintiff's interrogatory number 15 based on relevancy.**

16.    Please state if or not did you fully explain to each official upon delegating your responsibilities to or provided your signature authority to the full scope/circumstances and/or constitutional obligations of performing your duties and signing your name.  If so, state in great detail the complete explanation provided to each official.

8

**Response:  Defendants object to Plaintiff's interrogatory number 16 based on relevancy.**

16.     If such actions named in interrogatory #16 are descriptive in a document, please produce all documents.

**Response:  Defendants object to Plaintiff's request to produce, number 16, based on relevancy.**

17.     Please state in great detail by sequence of events the complete circumstances involving each provided reason as to why plaintiff was segregated on november 28, 2000 at menard correctional center.  (sic)

**Response:  Defendants object to Plaintiff's interrogatory number 17 as this interrogatory was answered by Defendants in Plaintiff's first set of Interrogatories.  Additionally, Plaintiff's interrogatory number 17 is not relevant to his claims in the pending cause of action.**

17.     Please provide all documents created, used or reviewed leading up to or during the placing this plaintiff in segregation at Menard Correctional Center on november 28, 2000 (including but not limited to incident reports, memorandums, or interviews conducted etc. . . as the term document is defined in federal rule of civil procedure)  (sic)

**Response:  Defendants object to Plaintiff's interrogatory number 17 based on relevance.  The reasons for Plaintiff's placement in segregation has no bearing on Plaintiff's claims of conditions of confinement or claims of emotional distress.**

18.     Please individually state (all nine defendants) have you ever while being employed as an IDOC official been found guilty or liable or was a recipient of an

unfavorable decision reached by a court of law as a result of a civil complaint or criminal complaint being filed by an inmate in custody of the Illinois Department of Corrections. If so, please individually produce all documentation relevant or resulting to interrogatory #18.

**Response:   Defendants objected to this interrogatory based on relevance in their responses to Plaintiff's first set of Interrogatories, and continue their objection.**

19.    Please indicate when responding to interrogatory #18 and document request #18 which civil or criminal complaint references to eighth amendment claims that would be relevant, consistent or similar to the claims made by plaintiff in the above entitled cause.

**Response:   Defendants objected to this interrogatory based on relevance in their response to Plaintiff's first set of Interrogatories and continue their objection.**

20.    Please individually state or identify (all nine defendants) have you ever took an oath or signed an oath on documentation as an employee of the Illinois Department of Corrections consisting of the duties you are expected to perform or the law you were expected to abide by.  (sic)

**Response:   Defendants object to Plaintiff's interrogatory number 20 based on relevance.**

20.    If such oath is written in any policy, directive or other document, please produce the document.

**Response:   Defendants object to Plaintiff's request to produce number 20 based on relevance.**

10

21.    Please identify if or not and/or the complete circumstances consisting of an inmate receiving a monthly state pay (state allowance or state stipend) for the purpose of purchasing hygiene items ensuring that an inmate body remains sanitary as to his surroundings also.  (sic)

**Response:  Defendants object to Plaintiff's interrogatory number 21 based on relevance.  Plaintiff's state pay is not at issue in this matter.**

21.    Please provide all existing documents pertaining to the purposes and reasons of allocating a $10.00 state pay to each inmate.

**Response:  Defendants object to Plaintiff's request to produce number 21 based on relevance.**

22.    Please state in great detail the protection, assistance or representation you receive as an Illinois Department of Corrections employee, being apart of any union, when a disciplinary report, investigative report or any complaint is filed against each individual defendant alleging that an infraction have been committed or a crime has tooken place.  (sic)

**Response:  Defendants object to Plaintiff's interrogatory number 22 based on relevance.**

22.    Please produce all documents or contracts signed by each defendant consisting of each defendant being a member of a particular union who anticipates protection, assistance or representation by a union representative should any situation arise as an employee of the Illinois Department of Correction.

**Response:  Defendants object to Plaintiff's request to produce number 22 based on relevance.**

11

Plaintiff wishes to clarify interrogatory and production of document request #21 relevancy to defendants as plaintiff eighth amendment claims all consist of health, safety and sanitation reasons, where upon information and belief this particular monthly state pay is provided to inmates for purposes of assistance in order for inmates to buy soap, deodorant, toothpaste, a toothbrush, shampoo and conditioner etc. . . these items as describe are definitely relevant to plaintiffs' health, safety and sanitation claims where this #10 month state pay was intentionally withheld from plaintiff during the 12 months of november 28, 2000 until november 28, 2001 and plaintiff is requesting through interrogatory and production of document request #21 a response and documents to ensure that defendants followed rules & regulation as promulgated by IDOC for each defendant to follow referencing the allocation to plaintiff a $10 monthly state pay and if not, why was this $10 monthly state pay intentionally withheld preventing plaintiff to utilize this assistance for the purposes intended.  (sic)

23.    For Defendants Roger Cowan and Gary A. Knop.  please state if you directly or indirectly took part in or exerted any influential authority on a December 4, 2000 committee decision at Menard C.C. to ensure that plaintiff would endure a year long effect of the eighth amendment claims described in plaintiff's complaint.

**Response:   Defendants Cowan and Knop object to Plaintiff's interrogatory number 23 based on relevance.  As stated above, Plaintiff's placement in segregation is irrelevant to his conditions of confinement claims.**

24.    Please specify in great detail if the eighth amendment claims as set forth in plaintiffs' complaint are a result of or the complete circumstances of a december 4, 2000 committee hearing deriving from a menard correctional center institutional

12

standard or policy or an Illinois Department of Corrections agency standard or policy

imploring its adjustment committee officers to find a certain/particular percentage of

inmates appearing before an adjustment committee hearing guilty during the year 2000

through 2001.   (sic)

**Response:   Defendants object to Plaintiff's interrogatory number 24 based on**

**relevance.**

      24.    If such standard or policy are set forth in a directive or other ducment,

please produce the document(s).

**Response:   Defendants object to Plaintiff's request to produce number 24 based**

**on relevance.**

                          Respectfully submitted,

                          GARY KNOP, ROGER COWAN,
                          THOMAS MAUE AND, TOM CARAWAY,

                            Defendants,

                          LISA MADIGAN, Attorney General,
                          State of Illinois

Ellen C. Bruce, #6288045           Attorney for Defendants,
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706       By:
(217) 782-9026                ELLEN C. BRUCE
                          Assistant Attorney General

Of Counsel.

13



*CC. Alus*
*Tom Maue.*
*Tammy Degenhardt*

**Illinois**
**Department of**
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:     7/12/01

TO:       Roger Cowan, Warden
          Menard Correctional Center

FROM:     Mark Gerdes, Environmental Health Coordinator
          Health Services Administration

SUBJECT:  **Safety and Sanitation Inspection Response**

Following review of your 6/26/01 response to findings contained in a 6/6/01 Safety and Sanitation Inspection report, it is my opinion that all corrective actions taken are appropriate for addressing the 6/01 report findings.

Mark Gerdes
Environmental Health Coordinator

cc:    Menard CC Audit Liaison

: 00001



**Illinois**
**Department of**
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## MEMORANDUM

DATE:     June 26, 2001

TO:       Mark Gerdes, LEHP
          Environmental Health Coordinator

FROM:     Roger D. Cowan
          Warden

SUBJECT:  Safety and Sanitation Inspection

**Health Care Unit**

(Finding) Water damage was present to certain drop-in ceiling tiles located in the 3rd floor north hallway (this was identified in a 11-16-00 inspection report). I was informed that a proposal has been submitted for roof repair. Additional water damage was present to ceiling tiles in Room 310.

**(Response) Roof project completed in June, repairs completed to damaged ceiling tiles (no water damage issues at present time).**

(Finding) Replace or resurface the tables (as soon as funds can be made available).

**(Response) New vinyl being purchased, repairs completed within 10 days from report date.**

(Finding) Replace or resurface counter tops and edges (as soon as funds can be made available).

**(Response) Resurfaced in month of May, follow-up maintenance will continue.**

: 00002



*Duty Wardens*

*Dwight Brockman*

**George H. Ryan**
Governor

**Illinois**
Department of
**Corrections**

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , Il. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:      6/6/01

TO:        Roger Cowan, Warden
           Menard Correctional Center

FROM:      Mark Gerdes, LEHP
           Environmental Health Coordinator

SUBJECT:   **Safety and Sanitation Inspection**

On 4/4/01, a safety and sanitation inspection was conducted at the Menard
Correctional Center.  The following are findings (F) determined to be inconsistent with
applicable standards.  Note that a suggested time frame for correction follows the
recommendations (R).  Please provide a response.

**Health Care Unit**

F:    Water damage was present to certain drop-in ceiling tiles located in the 3rd floor
      north hallway (this was identified in a 11/16/00 inspection report).   I was
      informed that a proposal has been submitted for roof repair.  Additional water
      damage was present to ceiling tiles in Room 310.

R:    In order to promote sanitary conditions, make any necessary repairs (as soon as
      funds can be made available) and continue with project funding efforts.

F:    In Rooms 105, 106, 108, 205, 207, and 209, vinyl table surfacing was cut or torn
      in limited areas.  Similar damage was identified in a 11/16/00 inspection report.
      The damaged table surfacing limits effective cleaning and sanitization.

R:    Replace or resurface the tables (as soon as funds can be made available).

F:    In Rooms 205 and 207, plywood was exposed on work surfaces.  Exposed wood
      surfaces limit effective cleaning and sanitization.

R:    Replace or resurface affected counter tops and edges (as soon as funds can be
      made available).

: 00003

On the date of the site visit, any other findings were either not significant or corrected during the inspection, previously identified through work order submittals, or awaiting funding for resolution.


Mark Gerdes, LEHP
Environmental Health Coordinator


cc:    Menard CC Audit Liaison



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , Il. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:     6/6/01

TO:       Roger Cowan, Warden
          Menard Correctional Center

FROM:     Mark Gerdes, LEHP
          Environmental Health Coordinator

SUBJECT:  **Food Service Inspection**

On 4/4/01, a food service inspection was conducted at the Menard Correctional Center. The following are findings (F) determined to be inconsistent with applicable standards. Note that a suggested time frame for correction follows the recommendations (R). Please provide a response.

F:    At the west end of the steam kettle island, a section of block wall was missing and damaged.  Due to the damage, debris and piping was exposed.  The condition of the damage limits effective cleaning and sanitization.

R:    In order to promote sanitary practices, make necessary repairs (90 days).

F:    Due to damaged gaskets or poorly-fitting doors, a steam oven in the special diet room was leaking steam.  The hood system located above the steam oven was not operating.  The steam generated by the oven was contributing to excessive humidity in the kitchen area.

R:    In order to decrease humidity and promote sanitary practices, make necessary repairs to the steam oven and make the exhaust system functional (as soon as funds can be made available).  If the exhaust system is not able to be repaired, contact the IDOC liaison to the Office of the Illinois State Fire Marshal regarding if a hood exhaust & suppression system is necessary above the steam oven; if a system is required, purchase and install an appropriate  exhaust and fire suppression system (as soon as funds can be made available).

: 00005

F:  In the employee dining room kitchen, a section of block wall was exposed around a newly-installed door at the back entrance.

R:  Make necessary repairs to the block wall (90 days).


On the date of the site visit, any other findings were either not significant or corrected during the inspection, previously identified through work order submittals, or awaiting funding for resolution.


Mark Gerdes, LEHP
Environmental Health Coordinator


cc:  Menard CC Audit Liaison



**Illinois**
**Department of**
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## M E M O R A N D U M

**DATE:** 6/06/01

**TO:** Roger Cowan, Warden
Menard Correctional Center

**FROM:** Mark Gerdes, LEHP
Environmental Health Coordinator

**SUBJECT:** **Ventilation Survey**

On 4/4/01, a qualitative ventilation survey was conducted at the Menard Correctional Center. Air flow measurements were obtained with a KURZ Series 490 Anemometer. The following are test results from a random sample of rooms.

*Airflow in cubic feet/minute (cfm)*

| Area | CFM/Occupant |
|------|------|
| Housing Unit rooms | 20-125 (A) |
| MSU rooms | 40-50 |
| | |
| Armory, MSU control | 150-1000 |
| HU control areas | Sufficient (B) |
| | |
| Main dining rooms | >10 (C) |
| MSU dining room | >10 (D) |

(A)   Values based on actual readings and estimates from a 3/28/86 report by Edward J. Long & Associates, Ltd. and 5/1/92 ventilation report by Peter Kwasnik, former Environmental Health Coordinator. Based on a visual inspection and an absence of conditions typically associated with inadequate ventilation (excessive odors, heat and humidity), it is my opinion that there are no significant changes from the values indicated in the two reports.

(B)   Estimates based on the 3/86 and 5/92 ventilation reports referenced above and the 4/01 site visit, at which there was an absence of conditions typically associated with inadequate ventilation.

(C)   Value taken from the 5/92 ventilation survey.

(D)   Estimate based on a visual inspection and absence of conditions typically associated with inadequate ventilation.

: 00007

Conclusion

It is my opinion that ventilation is in conformance with ACA Standards 3-4144 & 3-4145.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:    Menard CC Audit Liaison



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O. Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:      6/06/01

TO:        Roger Cowan, Warden
           Menard Correctional Center

FROM:      Mark Gerdes, LEHP
           Environmental Health Coordinator

SUBJECT:   **Illumination Survey**


On 4/4/01, an illumination survey was conducted at the Menard Correctional Center.
Illumination readings were taken with a General Electric Model 214 Light Meter.  The
following are test results from a random sample of rooms.

*Illumination in Foot Candles (fc)*

| Area | Reading | Grooming |
|------|---------|----------|
| Housing Unit rooms | 10-50 * | 10-110 * |
| MSU rooms | 50-120 | 30-40 |

\*
    In some North Housing Unit rooms, illumination levels do not meet the requirements of ACA Standard
3-4139 of 20 foot candles (fc) minimum.  However, security requirements within the unit may justify the
current lighting design (bulbs recessed behind a metal grate).  If permitted, use of personal reading
lamps would elevate the reading-level fc values.

    Some values less than 20 fc in South Housing Unit rooms may be caused by use of incandescent bulbs
rated at 34, 40, or 50 watt power; if the electrical wiring in the HU is of sufficient capacity, illumination
may be increased through installation of higher-wattage bulbs.


Mark Gerdes, LEHP
Environmental Health Coordinator


cc:    Menard CC Audit Liaison

: 00009



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O.Box 19277 / Springfield, IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:     6/06/01

TO:       Roger Cowan, Warden
          Menard Correctional Center

FROM:     Mark Gerdes, LEHP
          Environmental Health Coordinator

SUBJECT:  **Sound Level Survey**

On 10/10/00 & 4/4/01, sound level surveys were conducted at the Menard Correctional Center. Sound level readings were taken with a CEL Instruments Model 231 Sound Survey Meter. The following are test results from a random sample of rooms.

*Sound Level in Decibels (dBA)*

|                            | Day   | Night |
|----------------------------|-------|-------|
| Housing Units/Living Areas | 50-70 | 38-45 |

### Conclusion

It is my opinion that sound levels are in conformance with ACA Standard 3-4143.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:   Menard CC Audit Liaison

: 00010



*Also Knop*
*Supt. Moore*

**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O. Box 19277 / Springfield, Il. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:     1/11/01

TO:       Roger Cowan, Warden
          Menard Correctional Center

FROM:     Mark Gerdes, LEHP
          Environmental Health Coordinator

SUBJECT:  **Safety and Sanitation Inspection**

Following review of your 12/29/00 response to findings contained in a 11/16/00 Safety and Sanitation Inspection report, it is my opinion that all response actions taken by facility personnel are appropriate for addressing the 11/16 report findings.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:     Menard CC Audit Liaison



**Illinois
Department of
Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:     7/27/01

TO:       Jonathan Walls, Warden
          Menard Correctional Center

FROM:     Mark Gerdes
          Environmental Health Coordinator

SUBJECT:  **Food Service Inspection Response**

Following review of the 6/21/01 Menard CC response to findings from a 6/6/01 Food
Service Inspection report, it is my opinion that all response actions taken are appropriate
for addressing the 6/6/01 report findings.


Mark Gerdes
Environmental Health Coordinator


cc:     Menard CC Audit Liaison



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## MEMORANDUM

**DATE:**     June 21, 2001

**TO:**       Mark Gerdes, LEHP
             Environmental Health Coordinator

**FROM:**     Roger D. Cowan, Warden
             Menard Correctional Center

**SUBJECT:**   Food Service Inspection

1.  Finding:  In the Inmate kitchen at the west end of the steam kettle island, a section of the block wall was missing and damaged.  Due to the damage, debris and piping was exposed.  The condition of damage limits effective cleaning and sanitization.

    Response:  Repaired

2.  Finding:  Due to a damaged gasket or poorly fitting doors, a steam oven in the special diet room was leaking steam.  The hood system located above the steam oven was not operating.  The steam generated by the oven is contributing to excessive humidity in the kitchen area.

    Response:  A new steam kettle has been purchased awaiting installation.  Work order have been submitted.  The unit in question is awaiting new gaskets and repairs from outside contractors.  The hood system doesn't need a suppressed system per Fire Marshall, due to no gas, open flame, or electric to unit.  Work orders have been submitted to repair existing exhaust system.

3.  Finding:  In the Employee Dining Room Kitchen, a section of block wall was exposed around a newly installed door at the back entrance.

    Response:  Work orders have been submitted and repairs have been completed.

*Roger Cowan*

Roger D. Cowan
W A R D E N

cc: Dwight Brockmeyer, IACO
    A/W Greg Lambert
    Lee Schroeder, Dietary Manager

: 00013



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , Il. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## MEMORANDUM

DATE:     1/16/01

TO:       Roger Cowan, Warden
          Menard Correctional Center

FROM:     Mark Gerdes, LEHP
          Environmental Health Coordinator

SUBJECT:  **Food Service Inspection**

Following review of your 1/5/01 response to a 11/16/00 Safety and Sanitation
Inspection report, it is my opinion that the response action taken at Menard CC is
appropriate for addressing the 11/16/00 report recommendation.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:     Menard CC Audit Liaison

: 00014



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:      January 5, 2001

TO:        Mark Gerdes, LEHP
           Environmental Health Coordinator

FROM:      Roger D. Cowan, Warden
           Menard Correctional Center

SUBJECT:   Food Service Inspection 10/10/00

Following is the response to the Food Service Inspection, which was conducted on October 10, 2000.

A needs survey has been completed and bids are being taken for leasing acceptable insect eliminators. Installation should occur prior to April, 2001.

Roger D. Cowan
W A R D E N

RDC:jp

cc: Gary Knop, A/W Operations
    Tom Maue, Safety/Sanitation Coordinator
    Internal Audit Control Officer

: 00015



**Illinois**
**Department of**
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:    11/16/00

TO:      Roger Cowan, Warden
         Menard Correctional Center

FROM:    Mark Gerdes, LEHP
         Environmental Health Coordinator

SUBJECT: **Food Service Inspection**

On 10/10/00, a food service inspection was conducted at the Menard Correctional
Center. I am pleased to report that, on the date of the site visit, any findings were
either not significant in nature, previously identified through work order submittals, or
awaiting funding for resolution.

The following recommendation appeared in 2/25/98 and 7/2/99 Food Service Inspection reports and still
applies:

In order to control fly infestation in the kitchen and food preparation/service areas, lease an appropriate
number of Ecolab Stealth™ units for dietary areas. Product and contact information is attached.

Unlike bug "zapper"-type units (where insects are destroyed and the remaining debris can be tracked
through the area), the Stealth™ merely traps insects, has an enclosed base and can be used in food
preparation areas. The unit is reported to be effective for airborne insect control at certain other IDOC
facilities and can ultimately reduce the chance for disease transmission in food preparation areas.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:     Menard CC Audit Liaison

: 00016

# MAXIMA

## MAXIMA delivers maximum effectiveness.

The Stealth Maxima is the workhorse of the program. A high performance unit, the Maxima is specially designed for back-of-the-house placement.



• Perfect for kitchens and utility areas — wherever maximum fly catching power is needed.

• UL tested for safety and reliability, the Stealth Maxima can be hard-wired or plugged into any grounded 110V outlet.

• Thousands of satisfied customers agree — the Stealth Maxima delivers maximum fly stopping effectiveness.

• Available in cool white only.



# DECORA

## DECORA does the dirty work in style.

New from Ecolab, the Stealth Decora makes it possible to discreetly control fly problems in public, front-of-the-house areas.





• The Stealth Decora's small size and attractive design options make it stylishly unobtrusive.

• Available in 2 colors and styles, the Decora unit blends in to become an integral part of your facility's interior design (available in cool white and warm grey).

• Ecolab also allows you to paint or decorate the unit to match your facility's interior design.

• The stylish Decora provides unbeatable performance in a smaller, front-of-the-house unit.

For more information on our comprehensive Flying Insect Defense Program or a FREE premises survey, call 1-800-325-1671.

# 1-800-325-1671

ECOLAB
Pest Elimination Services
Ecolab Center
Wabasha
St. Paul, MN 55102        © Ecolab Inc. 1996

## ECOLAB®
### Pest Elimination Services

: 00017



**Illinois**
**Department of**
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:      11/16/00

TO:        Roger Cowan, Warden
           Menard Correctional Center

FROM:      Mark Gerdes, LEHP
           Environmental Health Coordinator

SUBJECT:   **Safety and Sanitation Inspection**


On 10/10/00, a safety and sanitation inspection was conducted at the Menard
Correctional Center. The following are findings (F) determined to be inconsistent with
applicable standards. Note that a suggested time frame for correction follows the
recommendations (R). Please provide a response.


**Health Care Unit**

F:    On the third floor, water damage was present on drop-in ceiling tiles located in
      the north hallway. I was informed that a proposal has been submitted for roof
      repair.

R:    In order to promote sanitary conditions, make any necessary repairs (as soon as
      funds can be made available) and continue with project funding efforts.

F:    In rooms 106, 207, and 209, vinyl table surfacing was cut or torn in limited areas.
      The damaged covering limits effective cleaning and sanitization.

R:    Replace or resurface the tables (as soon as funds can be made available).


**Cold Storage**

F:    Certain cooler/freezer door frames exhibited moderate to sever impact damage.
      Water damage to sections of the corridor ceiling has resulted in warped and
      bowed panels throughout the corridor.

(cont.)

R:   Replace or repair the door frames and, if the cause of water damage in the corridor ceiling has not been corrected, make necessary repairs (as soon as funds can be made available).


On the date of the site visit, any other findings were either not significant or corrected during the inspection, previously identified through work order submittals, or awaiting funding for resolution.


Mark Gerdes, LEHP
Environmental Health Coordinator


cc:   Menard CC Audit Liaison



## State of Illinois
## Department of Public Health

1252454

**LICENSE, PERMIT, CERTIFICATION, REGISTRATION**

The person, firm or corporation whose name appears on this certificate has complied with the provisions of the Illinois Statutes and/or rules and regulations and is hereby authorized to engage in the activity as indicated below.

JOHN R. LUMPKIN, M.D.
DIRECTOR

Issued under the authority of
The State of Illinois
Department of Public Health

| EXPIRATION DATE | CATEGORY | I.D. NUMBER |
|---|---|---|
| 03/31/2005 | 055 | 01070397 |

MARK J GERDES
IS CERTIFIED IN FOOD SERVICE
SANITATION BY EXAM ON 03/31/95

ISSUED 01/29/00

**BUSINESS ADDRESS**

MARK J GERDES

IL

The face of this license has a colored background. Printed by Authority of the State of Illinois • 1/99 •

---

**OSHA**
US DEPARTMENT OF LABOR
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION
TRAINING INSTITUTE

This acknowledges that
**MARK GERDES**

is an OSHA General Industry Outreach Trainer

Trainers are authorized to conduct 10- and 30- hour
General Industry outreach training in accordance
with guidelines provided by the OSHA Training Institute.

Director                         Expires **8/11/03** 

---

**OSHA**

U.S. Department of Labor
Occupational Safety
and Health Administration
National Training Institute

**MARK GERDES**

Has completed
A GUIDE TO VOLUNTARY COMPLIANCE
IN SAFETY AND HEALTH COURSE, #501
and is authorized as a 10- and 30- hour
General Industry Outreach Program Trainer.

Director                         **11/22/96**
                                 Course Date

---



## State of Illinois
### Department of Professional Regulation

10592870

The person, firm or corporation whose name appears on this certificate has
complied with the provisions of the Illinois Statutes and/or rules and regulations
and is hereby authorized to engage in the activity as indicated below.

LICENSE NO.                         EXPIRES:

183-000591                         04/30/2002

LICENSED
ENVIRONMENTAL HEALTH
PRACTITIONER

MARK J GERDES

IL

DIRECTOR                         Issued under the authority of
The State of Illinois
Department of Professional Regulation.



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

## MEMORANDUM

DATE:    11/16/00

TO:    Roger Cowan, Warden
        Menard Correctional Center

FROM:    Mark Gerdes, LEHP
        Environmental Health Coordinator

SUBJECT:   **Food Service Inspection**

On 10/10/00, a food service inspection was conducted at the Menard Correctional Center. I am pleased to report that, on the date of the site visit, any findings were either not significant in nature, previously identified through work order submittals, or awaiting funding for resolution.

The following recommendation appeared in 2/25/98 and 7/2/99 Food Service Inspection reports and still applies:

In order to control fly infestation in the kitchen and food preparation/service areas, lease an appropriate number of Ecolab Stealth™ units for dietary areas. Product and contact information is attached.

Unlike bug "zapper"-type units (where insects are destroyed and the remaining debris can be tracked through the area), the Stealth™ merely traps insects, has an enclosed base and can be used in food preparation areas. The unit is reported to be effective for airborne insect control at certain other IDOC facilities and can ultimately reduce the chance for disease transmission in food preparation areas.

Mark Gerdes, LEHP
Environmental Health Coordinator

cc:    Menard CC Audit Liaison

: 00021

<u>**Olive vs. Snyder, et al.**</u>
**USDC-SD Ill. No. 02-945-WDS**

## <u>CERTIFICATE OF SERVICE</u>

Ellen C. Bruce, Assistant Attorney General, herein certifies that she has served a

copy of the foregoing Defendants' Response to Plaintiff's Interrogatories and Request

for Production of Documents upon:

Anthony Olive, #B45286
Western Illinois Correctional Center
2500 Route 99 South
Mt. Sterling, Illinois  62353

by causing to be mailed a true copy thereof at the address referred to above in an

envelope duly addressed bearing proper first class postage and deposited in the United

States mail at Springfield, Illinois on June 30, 2008.

ELLEN C. BRUCE
Assistant Attorney General

Ellen C. Bruce, #6288045
Assistant Attorney General
General Law Bureau
Office of the Attorney General
500 South Second Street
Springfield, Illinois  62706
(217) 782-9026